IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

5:09-CV-61-FL

| | |
|---|---|
| RICHARD D. FOY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NORTH CAROLINA DEPARTMENT OF ) | **MEMORANDUM AND** |
| INSURANCE, ANGELA FORD, ) | **RECOMMENDATION** |
| ROBERT LISSON, REBECCA THORNTON, ) | |
| and NICHOLE FAULKNER, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This cause comes before the court on defendants' motions to dismiss **[DE-25]** plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). This matter is before the undersigned for the entry of a memorandum and recommendation, pursuant to 28 U.S.C. § 636(b)(1). The plaintiff, appearing *pro se*, has not responded to these motions, and the time for filing such response has passed. Accordingly, these matters are ripe for disposition. For the following reasons, it is **HEREBY RECOMMENDED** that the defendants' motions to dismiss plaintiff's claims be **GRANTED** in all respects.

## I. BACKGROUND

**A. Statement of the Case**

Plaintiff moved this court for leave to proceed *in forma pauperis*, attaching his

summonses and complaint on February 6, 2009 **[DE-1]**. This court denied plaintiff's motion on March 9, 2009, **[DE-2]**, and ordered plaintiff to pay his filing fee within thirty-days. Plaintiff paid his fee and filed his complaint on April 8, 2009 alleging abusive and malicious discharge as well as claims for relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") **[DE-3]**[1]. Defendants filed a motion to dismiss plaintiff's complaint on April 29, 2009 **[DE-16]**. The court issued a rule 12 letter to plaintiff on April 30, 2009 **[DE-18]**, and subsequently, plaintiff filed a motion to deny defendants' motion to dismiss on May 15, 2009 **[DE-19]**. On June 5, 2009 the court denied as moot both defendants' motion to dismiss **[DE-23]** and plaintiff's motion to deny defendants' motion to dismiss **[DE-24]**. Thereafter, defendants filed the instant motions on July 8, 2009 **[DE-25]**. A rule 12 letter regarding these motions was issued to plaintiff on July 8, 2009 **[DE-27]**. Plaintiff has not filed a response to defendants' instant motions to dismiss. Accordingly, defendants' motions to dismiss are unopposed by plaintiff.

**B. Statement of the Facts**

Plaintiff was employed by defendant North Carolina Department of Insurance ("NCDOI") from March 13, 2006 until September 9, 2008 as a communications specialist.

---

[1] Plaintiff alleges the following claims in his complaint: First Claim for Relief - Title VII of the Equal Rights Amendment - Sexual Harassment "Hostile Environment"; Second Claim for Relief - Title VII of the Equal Rights Amendment - Sexual Discrimination; and Third Claim for Relief - Abusive and Malicious Discharge. Plaintiff alleged similar claims before this court against the Bank of America Corporation. See Civil Action No. 5:04-CV-944-FL(1). Those claims were dismissed by this court in 2005 U.S. Dist. LEXIS 45249 (E.D.N.C. June 15, 2005) and, on appeal, the dismissals were affirmed by <u>Foy v. Bank of Am. Corp.</u>, 229 Fed. Appx. 242 (4th Cir. 2007).

**[DE-3]**, p. 1, ¶ 2. In September 2007, another individual ("the employee") also worked as a communication specialist in the same division with plaintiff.[2] **[DE-3]**, p. 3, ¶ 1a.

In August 2007, plaintiff requested to be moved to a cubicle away from the employee so that he would not have "to listen to her abusive conversations, witness her insubordination, and watch her violate [d]epartmental and [s]tate policy." **[DE-3]**, p. 4, ¶ 1c. After plaintiff made this request, defendants Robert Lisson ("Lisson"), who is white, Rebecca Thornton ("Thornton"), who is white, and Nichole Faulkner ("Faulkner"), who is black, allegedly engaged in efforts to persuade plaintiff to resign. **[DE-3]**, p. 4, ¶ 1c, **[DE-3]**, p. 5, ¶ 1d. These defendants also allegedly attempted to have plaintiff fired. **[DE-3]**, p. 4, ¶ 1c, **[DE-3]**, p. 5, ¶ 1d.

In November 2007, plaintiff and the employee participated in a training program to become complaint analysts. **[DE-3]**, p. 4, ¶ 1d. If promoted to this position, plaintiff would have received an approximate pay increase of twenty percent (20%), and a more flexible work schedule. **[DE-3]**, p. 4-5, ¶ 1d. From the beginning of the program, however, Thornton and Faulkner were critical of plaintiff's work. **[DE-3]**, p. 5, ¶ 1d. Plaintiff alleges that Thornton and Faulkner "expected him to perform as an experienced [c]omplaint [a]nalyst." **[DE-3]**, p. 5, ¶ 1d.

In December 2007, Thornton asked plaintiff to monitor the employee's business calls and excessive personal calls. **[DE-3]**, p. 4, ¶ 1b. For three months, plaintiff documented the

---

[2]Plaintiff describes himself as a white male, natural citizen and the employee as a black female, naturalized citizen from Ghana. **[DE-3]**, p. 3, ¶ 1a, **[DE-3]**, p. 4, ¶ 1b.

employee's calls. **[DE-3]**, p. 4, ¶ 1b. When callers did not understand the employee's "broken English", **[DE-3]**, p. 4, ¶ 1b, plaintiff alleges that she became "defensive, argumentative, disrespectful" and loud. **[DE-3]**, p. 4, ¶ 1b. Plaintiff gave his documentation to Faulkner, who appeared unaware of Thornton's request that plaintiff monitor the employee's calls. **[DE-3]**, p. 4, ¶ 1b. The employee continued to make improper calls, and these calls increased in number. **[DE-3]**, p. 4, ¶ 1b.

Plaintiff met with Lisson, Thornton, and Faulkner on January 31, 2008. **[DE-3]**, p. 5, ¶ 1d., **[DE-3]**, p. 8, ¶ 2c. Lisson stated that plaintiff was being removed from the training program for "sub-par work handling calls," and also for an inappropriate comment made to Thornton. **[DE-3]**, p. 5, ¶ 1d. Plaintiff did not remember making an inappropriate comment, **[DE-3]**, p. 5, ¶ 1d., and Thornton had not spoken to plaintiff about the comment until this meeting. **[DE-3]**, p. 5, ¶ 1d. Plaintiff was not allowed to speak during in this meeting, **[DE-3]**, p. 5, ¶ 1d., and at least two supervisors were present during any subsequent meetings with plaintiff. **[DE-3]**, p. 5, ¶ 1d. Plaintiff completed steps 1, 2, and 3 of the grievance process, **[DE-3]**, p. 5, ¶ 1d, **[DE-3]**, p. 5, ¶ 2, and during step 3, plaintiff learned that on February 4, 2008 the employee had been promoted to complaint analyst. **[DE-3]**, p. 5, ¶ 2. Plaintiff alleges that "[f]or the next seven months . . . [defendants were] determined to build a case in order to terminate him for 'just cause' and to avoid demonstrating pretext in their reason for terminating [him]." **[DE-3]**, p. 5, ¶ 1d.

Lisson sent plaintiff a follow-up disciplinary memo on February 1, 2008 about the

4

decision to remove plaintiff from the training program. **[DE-3]**, p. 8, ¶ 2. The memo detailed the number of issues surrounding plaintiff's work performance that were discussed during the January 31, 2008 meeting. **[DE-3]**, p. 8, ¶ 2c. Plaintiff alleges that although the disciplinary memo states that twelve issued were discussed with plaintiff, there was documentation to support that only five issues were discussed. **[DE-3]**, p. 8, ¶ 2c. From February 1, 2008 until April 28, 2008, plaintiff's calls were manually recorded and comments were provided to him on his call handling. **[DE-3]**, p. 8, ¶ 2d. Thornton and Faulkner routinely reviewed the previous day's calls with plaintiff. **[DE-3]**, p. 6, ¶ 4. Plaintiff pointed out errors in the comments to Lisson, Thornton, Faulkner, and defendant Angela Ford ("Ford"), **[DE-3]**, p. 8, ¶ 2d, and showed them discrepancies in the manually recorded calls as well. **[DE-3]**, p. 9, ¶ 2e. Plaintiff also pointed out that the contents of his incoming calls had been misunderstood, **[DE-3]**, p. 9, ¶ 2e, and that the manually, or even electronically, recorded calls did not present an "accurate assessment of [p]laintiff's performance." **[DE-3]**, p. 9, ¶ 2f. Plaintiff alleges that "[d]ocumented results of [p]laintiff's call handling for half of a days [sic] phone calls showed no significant errors even though [defendants] noted 6 errors out of 9 calls monitored." **[DE-3]**, p. 8, ¶ 2a. Plaintiff asserts that his work performance was criticized for minor shortcomings. **[DE-3]**, p. 6, ¶ 4. For example, plaintiff received an email from Thornton stating that he had begun his break three minutes late. **[DE-3]**, p. 6, ¶ 4.

Plaintiff alleges that one-half of his calls were monitored from February 4, 2008 until

5

July 22, 2008. **[DE-3]**, p. 6, ¶ 2. Plaintiff also alleges that his call level was changed and the volume of calls increased by forty-percent; plaintiff handled between 45-60 calls per day. **[DE-3]**, p. 6, ¶ 3. Prior to having his calls monitored, plaintiff had handled 20-25 calls per day. **[DE-3]**, p. 6, ¶ 3. Plaintiff was placed on investigatory leave on July 22, 2008 after emailing the director of human resources to inquiry whether he needed "to take a vacation to file an EEOC [c]omplaint." **[DE-3]**, p. 6, ¶ 2.

Plaintiff was terminated on September 9, 2008 for poor performance. **[DE-3]**, p. 9, ¶ 3. Thereafter, plaintiff was issued a supplemental dismissal letter for making false and misleading statements on his application.[3] **[DE-3]**, p. 9, ¶ 3. Plaintiff filed an EEOC claim, and received a right to sue letter, dated November 6, 2008. **[DE-3-2]**.

## II. Discussion

### A. Standards of Review

#### 1. Rule 12(b)(1) Standard

Under a Rule 12(b)(1) motion, the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.

---

[3]The undersigned notes that plaintiff does not provide details of the comment characterized as inappropriate in his complaint; does not provide a description of the grievance process or the reasons for his participation; does not state the contents of the documentation which allegedly proves the number of issues discussed during the January 31, 2008 meeting; and does not state the false and misleading statements he allegedly made resulting in his supplemental dismissal letter.

1982). A 12(b)(1) motion may attack the complaint as failing to state facts upon which subject matter jurisdiction may be based. Adams, 697 F.2d at 1219. In this instance, the facts in the complaint are alleged to be true and the plaintiff is afforded the same protections he or she would receive under a 12(b)(6) motion. Id. A 12(b)(1) motion may also attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. Id.; see also Mortensen v. First Fed. Sav. And Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977). This type of attack is used when a court's limited jurisdiction precludes hearing a case brought by the plaintiff. Materson v. Stokes, 166 F.R.D. 368, 371 (E.D.Va. 1996). Because the court's power to hear the case is at issue in a 12(b)(1) motion, the court is free to weigh the evidence to determine the existence of jurisdiction. Adams, 697 F.2d at 1219.

**2. Rule 12(b)(2) Standard**

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. The Fourth Circuit set forth the standard for deciding a motion based on Rule 12(b)(2) in Combs v. Bakker, 886 F.2d 673 (4th Cir.1989). A plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence. Id. at 676. When a factual dispute arises as to whether jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. Id. When a court decides the issue on the record before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden on the plaintiff is "simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive

the jurisdictional challenge." Id. A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the prima facie showing. Id. In such resolution, "the court must construe all relevant pleading allegations in a light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id.

### 3. Rule 12(b)(6) Standard

"The purpose of a Rule 12(b)(6) motion is to test the [legal] sufficiency of the complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999) (alteration added). "[A] Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Id. (internal citation omitted). A 12(b)(6) motion should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, (1957); see also Mylan Laboratories v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "On a Rule 12(b)(6) motion to dismiss, a court must accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." Nonetheless, the court "need not accept the legal conclusions drawn from the facts" or "unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Pshp., 213 F.3d 175, 180 (4th Cir. 2000); see also Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995) (opining the court is not "bound to accept conclusory allegations regarding the legal effect of the facts alleged"). The plaintiff, as a *pro se* litigant, is entitled to have his pleadings construed more liberally than those drafted by

attorneys. See Haines v. Kerner, 404 U.S. 519, 520 (1972). However, there are limits to which the court may legitimately go in construing such complaints. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

**B. Defendants' Motions to Dismiss.**

    **1. Defendants' First Motion to Dismiss**

Defendants move to dismiss all claims against defendants Ford, Lisson, Thornton, and Faulkner, as individuals, pursuant to Rule 12(b)(6). In the instant motion, defendants argue that the law does not permit plaintiff to bring Title VII or common law wrongful discharge claims, such as plaintiff's abusive and malicious discharge claim, against individual defendants, such as managers and employees. Thus, defendants argue that plaintiff's Title VII and abusive and malicious discharge claims against the individual defendants in this case must be dismissed.

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). The statute defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." Id. § 2000e(b).

It is well established in the Fourth Circuit that "supervisors are not liable in their individual capacities for Title VII violations." Lissau v. Southern Food Service, Inc. 159 F.3d

9

177, 180 (4th Cir. 1998). See also Ward v. Coastal Carolina Health Care, P.A., 597 F.Supp.2d 567 (E.D.N.C. 2009) (holding employees in their individual capacities were not liable for alleged Title VII violations); Shields v. Fed. Express Corp., 120 Fed. Appx. 956, 960 n. 2 (4th Cir. 2005) (per curiam) (opining the district court correctly ruled that a defendant in his individual capacity is an improper defendant to a Title VII claim).

Likewise, it is well established that common law claims of wrongful discharge are not available against individual employees or supervisors. See Cox v. Indian Head Indus., 187 F.R.D. 531, 535-36 (W.D.N.C. 1999) (holding "North Carolina does not recognize a claim against a supervisor in an individual capacity for wrongful discharge in violation of public policy"); see also Lorbacher v. Housing Authority of City of Raleigh, 493 S.E.2d 74, 79 (1997) (opining "[t]he trial court properly dismissed [a] claim against the individual defendants as they were not plaintiff's employers for the purposes of a wrongful discharge claim").

Accordingly, it is **HEREBY RECOMMENDED** that defendants' motion to dismiss all claims against defendants Ford, Lisson, Thornton, and Faulkner, as individuals, pursuant to Rule 12(b)(6) be **GRANTED**.

**2. Defendants' Second Motion to Dismiss**

Defendants move to dismiss the claim for abusive and malicious discharge against NCDOI, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6). Defendants argue that sovereign immunity protects NCDOI as an agency of the state of North Carolina against claims brought

by plaintiff. The defendants argue that because waiver of sovereign immunity has not been alleged, plaintiff's abusive and malicious claims against NCDOI must be dismissed.

"Where a claim for wrongful discharge is made against a state or its political subdivisions . . . sovereign immunity may prevent a plaintiff from proceeding on such claim." Oleyar v. County of Durham, 336 F.Supp.2d 512, 520 (M.D.N.C. 2004). A state agency such as the NCDOI, is generally considered part of the state for purposes of the Eleventh Amendment to the United States Constitution, particularly when any monetary judgment against the agency would be paid from the state treasury. See Regents of the Univ. Of Cal. v. Doe, 519 U.S. 425, 431 (1997). Here the plaintiff has demanded $10,000 in actual damages, $170,555 in compensatory damages, and $25,000 in punitive damages. **[DE-3]**, p.10. Pursuant to the Eleventh Amendment, "an unconsenting [s]tate is immune from suits brought in federal courts by her own citizens as well as by citizens of another [s]tate." Edelman v. Jordan, 415 U.S. 651, 663 (1974) (citations omitted).

In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity. Clark v. Burke County, 117 N.C.App. 85, 88, 450 S.E.2d 747, 748 (1994). Absent such an allegation, the complaint fails to state a cause of action. Id; see also Warren v. Guilford County, 129 N.C.App. 836, 838, 500 S.E.2d 470, 472, rev. denied, 349 N.C. 241, 516 S.E.2d 610 (1998); Paquette v. County of Durham , 155 N.C.App. 415, 418-19, 573 S.E.2d 715, 717 (2002).

Plaintiff makes no allegations in his complaint that NCDOI, as an agency of the state

of North Carolina, waived its sovereign immunity. North Carolina courts have "consistently disallowed claims based on tort against governmental entities when the complaint failed to allege a waiver of immunity." Paquette, 573 S.E.2d at 717-718 (citing Archer v. Rockingham County, 144 N.C.App. 550, 548 S.E.2d 788 (2001), rev. denied, 355 N.C. 210, 559 S.E.2d 796 (2002); Ingram v. Kerr, 120 N.C.App. 493, 462 S.E.2d 698 (1995); Morrison-Tiffin v. Hampton, 117 N.C.App. 494, 451 S.E.2d 650, dismissal all'd, rev. denied, 339 N.C. 739, 454 S.E.2d 654 (1995); Mullins by Mullins v. Friend, 116 N.C.App. 676, 449 S.E.2d 227 (1994)).

Finally, there is no indication in the instant matter that the state of North Carolina has waived its sovereign immunity with respect to plaintiff's wrongful discharge claim. "Because North Carolina has . . . retained sovereign immunity in its own courts from tort claims, the [s]tate is likewise entitled to Eleventh Amendment immunity when common law tort claims, such as wrongful discharge, that seek monetary damages are brought into federal court through pendent jurisdiction." Ji Da Dai v. Univ. of N.C., 2003 U.S. Dist. LEXIS 15880 n. 5. (M.D.N.C. 2003).

For these reasons, it **HEREBY RECOMMENDED** that defendants' motion to dismiss to dismiss plaintiff's claim for abusive and malicious discharge against NCDOI, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) be **GRANTED**.

### 3. Defendants' Third Motion to Dismiss

Defendants move to dismiss plaintiff's claim for hostile work environment under

Title VII against all defendants pursuant to Fed. R. Civ. P. 12(b)(6). Here, defendants argue that since plaintiff failed to "allege the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim," **[DE-26]**, p.17, plaintiff's Title VII hostile environment claim must be dismissed.

"Title VII is violated [w]hen the workplace is permeated with discriminatory [sex-based] intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Ocheltree v. Scollon Productions, Inc., 335 F.3d 325, 331 (4th Cir. 2003) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)) (alterations in original) (internal quotation marks omitted).

To establish a prima facie case of sexual harassment based on a hostile work environment, plaintiff must show that (1) [he] was subjected to unwelcome conduct; (2) the conduct was based on plaintiff's gender; (3) the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment; and (4) the conduct is attributable to plaintiff's employer. Ocheltree, 335 F.3d at 331. "The severe or pervasive element has both subjective and objective components." Ocheltree, 335 F.3d at 333 (citing Harris, 510 U.S. at 21-22) (internal quotation marks omitted). While plaintiff may subjectively believe that the offending conduct created a hostile work environment, "[c]onduct that is not severe or pervasive enough to create an *objectively* hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." Harris, 510 U.S. at 21 (emphasis added). In making this

determination, the court looks to the totality of the circumstances, including the frequency and severity of the offending conduct, whether plaintiff was physically threatened or humiliated or merely subjected to an offensive utterance, and whether the conduct unreasonably interferes with plaintiff's work performance. Ocheltree, 335 F.3d at 333 (citing Harris, 510 U.S. at 23). The purpose of this standard is to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citations omitted) (internal quotation marks omitted). Moreover, "the conduct must be extreme to amount to a change in the terms and conditions of employment." Id.

Defendants argue that plaintiff "fails to meet the third element of the claim because he does not alleged a 'sexually objectionable environment' - none of [p]laintiff's allegations provide any evidence that a reasonable person would have found the environment to be 'sexually objectionable'." **[DE-26]**, p. 19. "Plaintiff's allegations do not include any allegations of discriminatory intimidation or ridicule; therefore the workplace could not have been 'permeated' by it." **[DE-26]**, p. 19. Defendants further argue that

> [w]hile being pulled from a training program that could have led to promotion, if successfully completed, might be considered 'unwelcome' conduct, [p]laintiff admits that he was told that he was pulled from the program 'due to sub-par work handling calls. He makes no allegation that the action was based on his sex.

**[DE-26]**, p. 19.

Moreover, defendants contend that plaintiff is unable to show, under any plausible

14

reading of the facts, that the conduct complained of was sufficiently severe or pervasive to create a hostile or abusive work environment. The undersigned agrees.

In this instant matter, plaintiff has wholly failed to provide any factual allegations to support his assertion that a hostile environment existed at NCDOI. Plaintiff has summarily failed to establish that the activities he complained of were motivated by his gender, race, or age. In reviewing plaintiff's complaint, the undersigned finds that no objectively hostile or abusive work environment existed at NCDOI. While plaintiff complains that his supervisors were highly critical of his work performance which ultimately led to his termination, plaintiff's work environment is simply not a situation that an objectively reasonable person would find hostile or abusive such that it would alter the terms of plaintiff's employment. Plaintiff's complaint is rife with problems he experienced in his work environment, but none amount to harassment having anything to do with his gender, race, or age. See Bass. v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765. (holding "[e]ven viewed in the light most favorable to [plaintiff], the facts . . . allege[d] merely tell a story of a workplace dispute . . . and some perhaps callous behavior by [plaintiff's] superiors. They do not describe the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim.")

For the reasons stated, it is **HEREBY RECOMMENDED** that defendants' motion to dismiss plaintiff's claim for hostile work environment under Title VII against all defendants pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED**.

**4. Defendants Fourth Motion to Dismiss**

Defendants move to dismiss plaintiff's claim for discrimination under Title VII against all defendants pursuant to Rule 12(b)(6). Defendants argue that plaintiff fails to allege facts to support a claim for disparate treatment under Title VII. In his complaint, plaintiff alleges that defendants engaged in a conspiracy to establish "a pattern of discrimination against plaintiff that would guide defendants' action to later terminate plaintiff for poor job performance." **[DE-3]**, p. 7, ¶ 1.

"A plaintiff pursuing a Title VII claim may either offer direct evidence of discrimination or rely on the burden-shifting framework that was adopted by the Supreme Court in McDonnell Douglas." Prince-Garrison v. Maryland Dept. of Health and Mental Hygiene, 317 Fed. Appx. 351, 353, (4th Cir. 2009) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973)); see also Hill v. Lockheed Martin Logistics Management, Inc. 354 F.3d 277, 285 (4th Cir. 2004).

"To plead a case of disparate treatment sufficient to withstand a Rule 12(b)(6) motion, plaintiff must show: (1) [he] is a member of a protected class; (2) [he] has satisfactory job performance; (3) [he] was subjected to adverse employment action; and (4) similarly situated employees outside [his] class received more favorable treatment." Prince-Garrison, 317 Fed. Appx. at 353 (citing Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir.2007), cert. denied, 128 S. Ct. 955 (2008)). Defendants argue that "[p]laintiff does not make any factual allegations that would support the third and fourth elements of a Title VII disparate treatment claim." **[DE-26]**, p. 20. Defendants contend that

16

[p]laintiff does not allege that he was qualified for the [c]omplaint [a]nalyst position to which he was seeking promotion, nor does he allege that he was performing his job at a level that met his employer's legitimate expectations. Indeed, the [p]laintiff notes that he was informed by [defendants] that both his failure to obtain a job promotion and his termination were due to his sub-par work performance.

**[DE-26]**, p. 20-21.

Defendants further argue that plaintiff does not allege that his "race, sex, or national origin had any influence on the [p]laintiff's failure to obtain a promotion or his job termination." **[DE-26]**, p. 21. In the instant matter, plaintiff cannot establish a prima facie case of disparate treatment. Plaintiff fails to show that he was performing his job in a satisfactory manner. By plaintiff's own account, his performance at NCDOI was never satisfactory, as he consistently received reports of deficient work performance, was removed from NCDOI's training program for poor performance, had his calls monitored or recorded, and was eventually terminated for "sub-par work performance." Nor, does plaintiff allege facts that his, or the other employee's, race, gender, or national origin was a determining factor in the employee's promotion or his termination. Although plaintiff alleges in his complaint that the employee, who had been promoted, placed consumers on hold for indefinite periods, took leave without prior notice, failed to report in after being two hours late, and continued to make improper calls without verbal or written disciplinary action, **[DE-3]**, p. 6, ¶ 5, plaintiff does not allege that "he tried to engage in the same actions as [the employee] or that he was prevented from doing these same actions by [defendants]." **[DE-26]**, p. 9. Morever, the undersigned finds that defendants put forth sufficient, and legitimate,

17

legal reasons for terminating plaintiff. Specifically, defendants note that plaintiff performed poorly at work and made false and misleading statements on his application. The undersigned finds that plaintiff cannot sustain a claim for discrimination under Title VII.

Therefore, it is **HEREBY RECOMMENDED** that defendants' motion to dismiss plaintiff's claim for discrimination under Title VII against all defendants pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED** .

### III. Conclusion

For the aforementioned reasons, it is **HEREBY RECOMMENDED** that defendants' Motions to Dismiss **[DE- 25]** be **GRANTED** in all respects and that plaintiff's Complaint **[DE-3]** be **DISMISSED** in its entirety.

**SO RECOMMENDED** in Chambers at Raleigh, North Carolina this 19th day of November, 2009.

_____
William A. Webb
U.S. Magistrate Judge